Approved: _____
　　　　　　Brett M. Kalikow
　　　　　　Assistant United States Attorney

Before:　　HONORABLE ROBERT W. LEHRBURGER
　　　　　　United States Magistrate Judge
　　　　　　Southern District of New York

**21 MAG 5392**

- - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA　　　　　　:　**SEALED COMPLAINT**

　　　- v. -　　　　　　　　　　　　:　Violations of
　　　　　　　　　　　　　　　　　　　　18 U.S.C. §§ 1956 and 2
DALIP KUMAR,　　　　　　　　　　　　:
　a/k/a "Dalip Vermani,"　　　　　　　COUNTY OF OFFENSE:
　　　　　　　　　　　　　　　　　　:　NEW YORK
　　　　　　　　Defendant.

- - - - - - - - - - - - - - - - - - X

SOUTHERN DISTRICT OF NEW YORK, ss.:

　　　　CONNOR VERES, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI"), and charges as follows:

### COUNT ONE
### (Money Laundering)

　　　1.　In or about December 2019, in the Southern District of New York and elsewhere, DALIP KUMAR, a/k/a "Dalip Vermani," the defendant, with the intent to conceal and disguise the nature, location, source, ownership and control of property believed to be the proceeds of specified unlawful activity, to wit, forgery and false use of a passport, in violation of Title 18, United States Code, Section 1543, conducted and attempted to conduct a financial transaction involving property represented to be the proceeds of specified unlawful activity, to wit, the proceeds of forgery and false use of a passport, in violation of Title 18, United States Code, Section 1543.

　(Title 18, United States Code, Sections 1956(a)(3)(B) and 2.)

## COUNT TWO
### (Money Laundering)

2. From in or around January 2021 to in or around February 2021, in the Southern District of New York and elsewhere, DALIP KUMAR, a/k/a "Dalip Vermani," the defendant, with the intent to conceal and disguise the nature, location, source, ownership and control of property believed to be the proceeds of specified unlawful activity, to wit, forgery and false use of a passport, in violation of Title 18, United States Code, Section 1543, conducted and attempted to conduct a financial transaction involving property represented to be the proceeds of specified unlawful activity, to wit, the proceeds of forgery and false use of a passport, in violation of Title 18, United States Code, Section 1543.

(Title 18, United States Code, Sections 1956(a)(3)(B) and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

3. I am a Special Agent with the FBI and have been in that position for approximately three years. In that capacity, I have participated in numerous investigations into money laundering, and have personally participated in the investigation of this matter.

4. Based on law enforcement agents' communications with a confidential source ("CS-1"),[1] my review of recorded conversations and text communications (and verbatim or summary translations thereof from the original Hindi), bank records, and law enforcement reports and records, my communications with

---

[1] CS-1 began assisting law enforcement in or around 2016. Prior to the beginning of his assistance, CS-1 was convicted and sentenced in federal court for charges related to running an unlicensed check cashing and gaming business. CS-1 has provided assistance to law enforcement without promise of pay, leniency with respect to any pending or known potential criminal charges, or relief with respect to any immigration consequences arising from his prior conviction. Law enforcement reimbursed CS-1 for flight, hotel, food and other expenses incurred in connection with a trip to India taken in furtherance of this investigation, as described further below. The information CS-1 has provided law enforcement has been deemed credible and reliable, and has been corroborated in part by independent evidence.

other law enforcement agents, and my training, experience, and participation in this investigation, I have learned, in substance and in part, the following:

      a.   In or around 2016, CS-1, acting at the direction of law enforcement, engaged in a series of financial transactions with an individual known to CS-1 as "Vermani," and subsequently identified as DALIP KUMAR, a/k/a "Dalip Vermani," the defendant. CS-1 was introduced to KUMAR by another individual known to CS-1 ("Individual-1"), who introduced CS-1 to KUMAR for the purpose of conducting these financial transactions. During these transactions, CS-1 negotiated for KUMAR to receive quantities of bulk currency, and, in exchange for a commission, KUMAR would send wire transfers to bank accounts designated by CS-1. During the course of transactions, CS-1, on approximately four occasions, delivered a total of over approximately $465,000 to KUMAR at KUMAR's office in Manhattan, New York, and KUMAR sent approximately four wire transfers totaling approximately $423,095 to two bank accounts designated by CS-1 that were held under the names of fictitious companies but were in fact controlled by law enforcement.

      b.   On or about April 27, 2016, law enforcement agents showed CS-1 pictures of various individuals believed to have been involved in the above transactions or similar activity. CS-1 identified a photograph of KUMAR as the individual known to CS-1 as Vermani, to whom CS-1 had delivered the bulk currency in the transactions described above.

      c.   In or about July 2019, CS-1, acting at the direction of law enforcement, again approached KUMAR and negotiated with KUMAR for KUMAR to launder money for a purported client of CS-1 (the "Client"). During the meeting, which was audio recorded, CS-1 told KUMAR, in substance and in part, that the Client made and sold Indian passports to assist people in India to illegally enter the United States.[2] During their conversation, CS-1 and KUMAR discussed the prices the Client charged for a passport, which KUMAR noted was more expensive

---

[2] See 18 U.S.C. § 1956(c)(7)(A) (defining specified unlawful activity to include "any act or activity constituting an offense listed in [18 U.S.C.] section 1961(1) . . . except an act which is indictable under subchapter II of chapter 53 of title 31"); *id.* § 1961(1)(B) (defining as "racketeering activity" acts in violation of 18 U.S.C. § 1543 (relating to forgery or false use of passport)).

3

than the amount charged by another person KUMAR knew who made passports. CS-1 and KUMAR discussed the amount of money coming from the sale of the passports that CS-1 wanted to launder on behalf of the Client. CS-1 indicated it would be approximately $100,000. CS-1 and KUMAR also discussed the price KUMAR would charge for the transaction. KUMAR referenced that he had previously charged CS-1 10% to 15%, but that was because another person (*i.e.*, Individual-1) was receiving a part of the profits from those earlier transactions. CS-1 and KUMAR did not settle on a specific commission during this conversation.

   d.   On or about September 3, 2019, CS-1 met with KUMAR at KUMAR's office in Manhattan, New York. During the meeting, CS-1 delivered to KUMAR a bag containing approximately $60,000. During the meeting, which was audio recorded, in substance and in part, KUMAR inquired whether the Client was involved in selling drugs. CS-1 said no, and that the Client makes illegal passports. CS-1 confirmed to KUMAR, however, that the money was "black money," meaning illegal proceeds, and KUMAR responded by acknowledging that KUMAR understood that the purpose of the transaction was to convert the black money into "white money," meaning clean money. CS-1 negotiated with KUMAR about the commission KUMAR would keep for the transaction, and they agreed to a 9% commission.

   e.   CS-1 subsequently provided to KUMAR the information for the bank account to which KUMAR should send the money, which bank account was held in the name of a fictitious company and which, in fact, was controlled by law enforcement ("UC Account-1").

   f.   On or about September 11, 2019, a wire transfer was received into UC Account-1. The wire transfer was approximately $54,555.14, reflecting the amount of money CS-1 delivered to KUMAR minus an approximately 9% commission and bank fees. The wire was sent by a bank account belonging to a particular company ("COMPANY-1"), the address for which is in Hong Kong. UC Account-1 is based in Manhattan, New York.

   g.   In or around December 2020 and January 2021, CS-1 again approached KUMAR about laundering money for the Client. During communications with KUMAR, which were recorded, CS-1 told KUMAR, in substance and in part, that the Client has funds from the sale of Indian passports that the Client needed to launder. CS-1 further told KUMAR that the money was located in India and the Client needed the money cleaned and transferred to their New York bank account. KUMAR agreed to provide CS-1

4

with a contact to whom CS-1 could deliver money in India and that KUMAR would have the money transferred to the Client's bank account.

    h. On or about January 13, 2021, CS-1 arrived in India. KUMAR provided CS-1 with a phone number of an individual in India ("Individual-2") whom CS-1 should contact to deliver the money, and provided CS-1 with a "token."[3]

    i. On or about January 14, 2021, CS-1, in New Delhi, India, met with Individual-2 and delivered approximately $40,000. Individual-2 provided CS-1 with a one rupee note, the serial number of which matched the token KUMAR provided CS-1.

    j. CS-1 subsequently sent a text message via WhatsApp to KUMAR with the bank account information, including the bank address in Manhattan, New York, for the account to which KUMAR should send the money. The bank account was held in the name of a fictitious company, but, in fact, was controlled by law enforcement ("UC Account-2").

    k. On or about February 8, 2021, a wire deposit of approximately $35,942.41 was received by UC Account-2. The wired amount reflected the amount of money CS-1 delivered to Individual-2 minus an approximately 10% commission and bank fees. UC Account-2 is located in Manhattan, New York. The wire was sent by a bank account belonging to a particular company ("COMPANY-2"). A publicly available website for COMPANY-2 indicates that COMPANY-2 is purportedly located in Singapore and provides IT services.

---

[3] A token is a serial number of currency bill (here, a one rupee note) used in money laundering transactions for individuals unknown to each other to identify themselves for the delivery of money. Generally, the person receiving the money to be laundered has the physical bill, and provides the bill to the person delivering the money as proof of the recipient's identity (that is, that they are not a law enforcement agent) and of completion of the delivery.

WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of DALIP KUMAR, a/k/a "Dalip Vermani," and that he be arrested and imprisoned or bailed, as the case may be.

                                                                                           S/ by the Court with permission
                                                                                           Connor Veres
                                                                                           Special Agent, FBI

Sworn to me through the transmission of this Affidavit by reliable electronic means, pursuant to Federal Rules of Criminal Procedure 4.1(a) and (b)(2)(A) __20th__ day of May, 2021

_____
THE HONORABLE ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK